# LAW OFFICE OF JOHN F. CARMAN

Attorneys at Law

| OF COUNSEL | 666 Old Country Road | ASSOCIATE ATTORNEY |
|---|---|---|
| SUSAN SCARING CARMAN, ESQ. | Suite 501 | SARA M. PERVEZ |
| MATTHEW W. BRISSENDEN, ESQ. | Garden City, New York 11530 | |
| | (516) 683-3600 | PARALEGAL |
| | Facsimile | ANNA M. SACCO |
| | (516) 683-8410 | |

March 23, 2020

**VIA ECF**
Honorable Nicholas Garaufis
United States District Judge
225 Cadman Plaza
Brooklyn, New York

      Re: *United States v. Matthew Lipsky*
         *Docket No. 19-CR-00203*

Dear Judge Garaufis:

  Please accept this letter requesting the immediate release on bail for my client, Matthew Lipsky who is presently detained at the Metropolitan Detention Center in Sunset Park. While a date for sentencing was set for April 9, 2020, we were recently advised that the proceeding will be held in early May, assuming that the Court system is operational by that time.

BACKGROUND

  Mr. Lipsky was arrested in New York and transported to Pennsylvania on March 8, 2019 on a warrant for a stalking charge that gave rise to this federal prosecution in Brooklyn. Mr. Lipsky was thereafter transported back to New York for arraignment and has remained in custody since that time.

  On September 11, 2019, a guilty plea was entered to a violation of the interstate stalking statute. Most recently, the sentencing hearing scheduled for January of 2020 was adjourned for the purpose of having Mr. Lipsky undergo a psychological evaluation. While the evaluation has taken place, the report is expected no sooner than March 31, 2020.

The Presentence Report is complete and calculated an advisory guideline range of 30-37 months. Mr. Lipsky is 39 years old and is in Criminal History Category I, having no criminal history whatsoever. He has strong family ties to Long Island and would live with him mother in Nassau County if released.

COVID 19

As the Court is aware, the events of recent weeks have caused unprecedented havoc with the criminal justice system, most especially, the prisons. Just this past weekend, the first confirmed case of the virus was announced by officials at MDC. Even before, attorney visitation with incarcerated clients has been virtually eliminated as part of extensive quarantining.

As the number of confirmed cases continues to rise dramatically, we are warned by public health officials of the possibility that our health care system will be overwhelmed and that fatalities will rise as a consequence of people not getting the care that they need to survive infection. Now that COVID 19 has made its first appearance at MDC, it is only a matter of time before the infection spreads within the prison population. Information is developing today that the stricken inmate was in contact with a large number of inmates and prison personnel before he became symptomatic.

Federal Defenders have been the leading voice on the coming dangers of Covid 19 on the prison population. Bail requests predicated on the fast-developing conditions associated with the virus are being filed. An excerpt from a previous motion reads as follows:

> "To date, the MCC and MDC have not met even the most basic recommendations of the CDC for preventing the spread of the coronavirus. Because of this, counsel has begun to encounter difficulties finding interpreters and experts willing to enter these facilities, and the many lawyers who are at high risk because of age or underlying medical condition have also been advised not to enter. Both facilities are still waiting for guidance from the BOP on screening and treatment. In the meantime, neither facility has a screening mechanism in place for staff or visitors, other than self-reporting. The MCC lacks even a basic sign advising people who have traveled to the highest-risk countries not to enter. Staff are not wearing face masks or gloves. Neither facility has hand sanitizer available.[1] The MCC has no soap, hot water, or paper towels in the visitors'

---

[1] On March 12, 2020, the Warden of the MCC advised that they are seeking to order hand sanitizer, and that the BOP has relaxed its strictures on hand sanitizer during this period. The Warden had no information as to when hand sanitizer might arrive at the facility.

bathroom. Both facilities plan to provide bar soap to inmates, but as of now, not every inmate has access to soap. Only those inmates who have money for commissary will be able to purchase antibacterial soap. Neither facility has any testing for COVID-19 available, and does not know when, if ever, it will have tests. <u>There is no medical ward or facility in place at either institution.</u> At MDC, the only stated plan, should an inmate become symptomatic for COVID-19, is to confine that inmate to the SHU, where the cells are cold, rife with black mold, and the ceiling leaks directly onto the beds.

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the MCC and MDC, and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions. On March 12, 2020, Magistrate Judge Orenstein decided that detaining a pre-trial defendant who was using drugs while on supervision would present too great a risk to the staff and inmates at MDC Brooklyn, ruling that part of the "danger to the community" calculus had to include the risk of a new inmate bringing the virus into the facility. *United States v. Raihan*, 20 Cr. 68 (BMC) (Mar. 12, 2020)."

MDC lacks the basic and necessary resources and equipment to manage this coming crisis. The national trend is to find creative ways to reduce inmate populations, rather than stubbornly maintaining them.

CONCLUSION

In light of the foregoing, Mr. Lipsky should be granted bail pending sentence, immediately. A combination of a bond, electronic monitoring and a curfew would suffice as assurances that he will return to court for the imposition of sentence, a substantial portion of which he has already served. His release will also afford him the opportunity to communicate in a meaningful fashion with his attorney as his sentencing hearing day approaches without unnecessarily subjecting his attorney to the dangers of entering the prison.

Mr. Lipsky has already accepted responsibility for his conduct and served a substantial sentence. There is no justification for continuation of his detention where the reality is that it subjects him to an unreasonable risk of infection in an environment that may well prove to be fatal.

Mr. Lipsky is willing to waive his right to be present for any proceeding relative to this application, whether it be in person or via video link. The government can be expected to oppose Mr. Lipsky's request for bail.

3

Thank you for your consideration.

Very truly yours,

/s/ John F. Carman
JOHN F. CARMAN
(JC 7149)

4