

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NS:KCB
F. #2019R00436

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 24, 2020

<u>By Email and ECF</u>

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Matthew Lipsky</u>
     <u>Criminal Docket No. 19-203 (NGG)</u>

Dear Judge Garaufis:

   The government respectfully submits this letter in response to defendant Matthew Lipsky's motion for release on bail, filed on March 23, 2020, in which he requests to be released from Bureau of Prisons custody due to the COVID-19 pandemic. For the reasons described below, the motion should be denied.

   As set forth in the government's sentencing memorandum dated January 23, 2020, which is incorporated herein by reference, the defendant Matthew Lipsky pled guilty to interstate stalking, in violation of Title 18, United States Code, Section 2261A(2)(B), on September 11, 2019. The defendant has been in custody since his federal arrest on March 15, 2019, because, as the government set forth in its detention memorandum dated April 4, 2019, which is also incorporated herein by reference, the defendant presents a significant risk of nonappearance and is a danger to the community. At sentencing, which is scheduled for early May, the defendant faces a one-year mandatory minimum sentence and a United States Sentencing Guidelines range of 30 to 37 months' imprisonment. Presentence Investigation Report ("PSR") ¶ 68.

  I. <u>The Defendant Should Be Detained Under Section 3143</u>

   Because the defendant has pled guilty and is awaiting sentencing, the Court "shall order" that the defendant "be detained, unless the judicial officer finds by clear and convincing evidence that" the defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). The defendant fails

to address this standard entirely. Indeed, he makes no attempt to establish—much less by clear and convincing evidence—that he does not present a flight risk or danger to the community. Nor could he.

The entirety of the defendant's disturbing conduct in this case is detailed at length in both the government's sentencing and detention memoranda, and the government will not repeat it here. In sum, for five months, between October 2018 and March 2019, the defendant stalked Jane Doe, who is an Assistant United States Attorney in the Eastern District of Pennsylvania. Id. ¶¶ 3-15. He stalked her despite her pleas for him to stop. Id. ¶¶ 3, 5-6. He stalked her despite law enforcement's pleas for him to stop. Id. ¶ 4. He stalked her despite a court order mandating that he stop. Id. ¶ 9. Indeed, despite all of these warnings, the defendant did not just fail to stop—his conduct escalated, culminating in his placement of a GPS tracking device underneath Jane Doe's car, enabling him to track her. Id. ¶ 12. His actions made Jane Doe fear for her safety and the safety of her children. Id. ¶ 16. Although the defendant half-heartedly asserts that "[a] combination of a bond, electronic monitoring and a curfew" would suffice to ensure the safety of the community, Def. Letter at 3, the defendant's history of flouting court orders to stalk Jane Doe demonstrates precisely the opposite.

Further, because the defendant has pled guilty and faces receipt of a substantial incarceratory sentence at his upcoming sentencing, the defendant has additional incentive to flee. Indeed, the government has requested a sentence on the high end of the defendant's 30 to 37 month Guidelines range, in light of the severity of the defendant's conduct in this case and because the defendant's actions in this case occurred over months. These actions, as Jane Doe described in her victim impact statement, made her feel "like prey, every hour of every day, for 150 days." Id. ¶ 15. Finally, the defendant possesses the resources to flee. See PSR ¶ 65 (describing defendant's significant assets).

Because the defendant has entirely failed to establish that he does not present a danger to the community or a flight risk by clear and convincing evidence, the government respectfully opposes the defendant's request for immediate release. Further, as set forth below, the defendant's current circumstances do not warrant release.

II.   Release Is Not Otherwise Warranted

The defendant seeks pretrial release on the grounds that he may be at risk for contracting COVID-19, a respiratory illness that can spread from person to person, while incarcerated at the Metropolitan Detention Center ("MDC"). The defendant, who is 39 years old, does not assert that he falls within a high-risk category should he contract COVID-19. Rather, he sets forth general risks faced by incarcerated individuals.

The BOP has implemented national measures to mitigate the spread of COVID-19 within prisons. See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp.

These measures, which have been implemented at the MDC, include the following:

- Suspension of all social and legal visits:  Social visits and legal visits have been suspended for 30 days, with case-by-case accommodations for attorney visits and legal calls.  Inmates will be provided additional inmate telephone minutes each month.

- Inmate movement:  All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.

- Screening and testing of inmates:  All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms.  Inmates with exposure risk factors are quarantined.  In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.

- Modified Operations:  The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, among other modifications specific to each facility.

In addition, counsel at the MDC, after consultation with the relevant staff, has advised the government that inmates incarcerated at MDC, including the defendant, are permitted to take additional steps to self-seclude by remaining in their cells.  Moreover, contrary to the defendant's claims, the government understands from MDC staff that (i) cleaning supplies are issued once a week, and all inmates have access to soap; (ii) inmate orderlies are cleaning the common areas of the institution; (iii) health services has identified those inmates who fall within an "at risk" population for COVID-19 and are monitoring the needs of those inmates as well as those of the rest of the population; (iv) showers are available on a daily basis; and (v) legal calls are being provided by unit team staff to maintain communication between inmates and their attorneys.[1]  Moreover, although the MDC is not one of the BOP's Federal Medical Centers, on a case-by-case basis, BOP's health professionals send inmates for consultations and treatments at New York City hospitals and other medical facilities.  The

---

[1]    The defendant weakly asserts that "[h]is release will . . . afford him the opportunity to communicate in a meaningful fashion as his sentencing hearing day approaches without unnecessarily subjecting his attorney to the dangers of entering the prison."  Def. Letter at 3.  The defendant has that opportunity now.  He does not assert that he has requested, and been denied, a legal call.  In any event, the defendant has already submitted his sentencing submission.  Indeed, the parties were prepared to proceed to sentencing in this case in January.  The sentencing was postponed at the Court's request for the defendant to receive a psychological evaluation.  That evaluation has taken place, and the parties are presently awaiting a report regarding the evaluation.

availability of COVID-19 tests is generally limited nationwide, but the BOP is working to test inmates where needed.

      The government understands from BOP personnel that an inmate at the MDC has tested positive for COVID-19, and that inmate has been placed in isolation. The government can confirm at this time that the defendant was not housed in the same housing unit as the inmate who tested positive for COVID-19. Further, as set forth above, the BOP is monitoring the status of the COVID-19 virus and is taking emergency steps to ensure the safety of its staff, inmates and the public. The defendant is not uniquely situated with respect to the risk of infection of COVID-19, and his personal circumstances do not overcome the Court's obligation to consider whether the defendant has established, by clear and convincing evidence, that he does not present a danger to the community or a flight risk. Accordingly, the permanent order of detention should remain in effect.

      Respectfully submitted,

      RICHARD P. DONOGHUE
      United States Attorney

By:   /s/
      Kayla Bensing
      Assistant U.S. Attorneys
      (718) 254-6279

cc:   The Honorable Nicholas G. Garaufis, United States District Judge (by ECF)
      Defense Counsel (by ECF)
      Clerk of Court (by ECF)